Green Mountain Turnpike Co. *vs.* Samuel Hemmingway.

An act, incorporating a turnpike company, exempted persons from the payment of
toll at any of the turnpike gates, who should be going "on the ordinary domestic
business of family concerns." The defendant was carrying materials for the repair
of buildings upon a farm, six miles distant from his own residence, and in the occu-
pation of a tenant.—Held that he was not entitled to the exemption.

The act inflicted a penalty upon any person, who "should attempt forcibly to pass
any gate, without having paid the legal toll at said gate." Held that a person who
was exempted, in respect of his business at the time of passing, from the payment of
toll, did not incur this penalty, though he should have refused to pay toll, and forci-
bly passed the gate, without making known his business, or notifying his exemption
to the toll gatherer.

This was action *of trespass* on the case, brought to recover a
penalty for attempting forcibly to pass a turnpike gate without
paying toll. A verdict and judgement passed for the defendant
in the county court, and the cause came here upon exceptions ta-
ken by the plaintiffs for a misdirection to the jury.

The act incorporating the Green Mountain Turnpike Com-
pany has two provisions upon which the merits of this case depend-
ed. In the proviso to the section fixing the amount of tolls, it is
declared, " That no person shall be obliged to pay any toll at either
" of said gates who shall be going to or from public worship, or to
" or from any grist-mill or saw-mill, or on militia duty, or on the
" ordinary domestic business of family concerns." And by an
" after section it is enacted, " That if any person shall cut, break
" down, or destroy, any of said turnpike gates, or dig up, or car-
" ry away any earth from said road ; or in any manner, wantonly
" and maliciously damage the same, or shall attempt forcibly to
" pass any gate on said road, without having paid the legal toll at
" said gate, such person shall forfeit and pay a sum not exceed-
" ing fifty dollars, nor less than one dollar, together with double
" damages and costs ; to be recovered, "&c.

The plaintiffs after giving in evidence the said act of incorpora-
tion, introduced evidence tending to prove, among other things,
that the defendant on the 27th day of April, A. D. 1829, came
on horse back to their gate in *Ludlow*, and was required by the
toll gatherer to pay his toll ; he refused to pay, rode up to the
gate, took out the pin, opened the gate and passed through with-
out getting off his horse—That he passed the gate in like man-
ner the day following—That on the 13th day of July, A. D.
1829, the defendant came to said gate with a waggon drawn by
one horse, and ordered the toll gatherer to unlock the gate, which
the latter refused to do until he paid his toll ; that he refused to
pay, and thereupon forcibly took said gate off the hinges, and broke
the gate post, so that the gate could not be locked, and passed
through with his horse and waggon, and then put the gate back

WINDHAM,
February,
1830.
―――
G. M. T. Co.
vs.
Hemmingway.

upon the hinges. The plaintiffs' evidence also tended to prove that the defendant did not, at any of the times of passing the gate as aforesaid, assign any reason for his refusing to pay toll, or claim to be exempt from the payment of toll at said gate.

The defendant introduced testimony tending to prove that he owned a farm in *Ludlow*, in the county of *Windsor*, and resided upon it till about two years before the trial, when he removed with his wife and part of his family to *Mount Holly*, in the county of *Rutland*, where he has ever since resided ; that until April, A. D. 1829, his said farm in *Ludlow* was carried on under his controul, by his minor son, he the defendant owning the stock and avails of said farm ; that when he so opened and passed said gate in April, he went to said farm to get some flax which was raised on said farm, and carried back said flax, being about forty-five pounds ; that previous to his passing the gate in July, he had leased the farm aforesaid to one *Howard* who was to make repairs on the house and barn, defendant finding the materials ; and that when he so passed the gate he was carrying materials to make said repairs, and a quantity of salt for his cattle which were on said farm, and that he carried home a cheese for his family. It also appeared that the defendant lived six or seven miles from said farm in *Ludlow*, which was situated between one and two miles from the turnpike, as was also the defendant's house in *Mount Holley*.

The plaintiffs contended that from this evidence they were entitled to recover, and the defendant insisted that he was justified in passing the gate and ought to have a verdict.

The court gave in charge to the jury, that if they believed the defendant, at the several times of passing said gate, was going to and-from said farm in *Ludlow*, upon the business and for the purposes aforesaid, as testified by his witnesses, he was entitled to pass toll-free, by virtue of said proviso in the act of incorporation, and was entitled to a verdict, even if he did not make known his business and claim his exemption : but if they should not believe that he passed upon that business, and that he passed in the manner testified to by the plaintiffs' witnesses, they would return a verdict for the plaintiffs. Verdict and judgement for defendant ; whereupon the plaintiffs excepted to the charge for misdirection in point of law.

*Bradley and Kellogg, for the plaintiffs,* contended,—1. That whether the defendant was exempted from the payment of toll or not, he incurred the penalty by forcibly attempting to pass the gate. The words " attempting to pass without having paid the

Windham,
*February,*
1830.

G. M. T. Co.
*vs.*
Hemmingway.

legal toll at said gate," refer in this instance rather to the rate or amount of toll made legal at the gate, than to the legal liability of the person passing ; since it could never have been the intention of the legislature, nor consonant to public policy, that such questions should be settled by force. And sufficient provision is made against unreasonable hindrance or delay by the corporation, in the penalties to which they are made liable ·by the 7th section of the act.

A privilege of exemption of this kind may be waived, and the proviso in favor of persons going " on the ordinary *domestic business of family concerns*" is in the nature of an exemption ; and it is contended that all exemptions, unless claimed or notified to the other party, are considered as waived. The defendant, therefore, by not claiming or notifying his exemption from toll, became liable to pay it, and the attempt to pass while he was so liable, subjected him to the penalty.—7 *Johns.* 185.

2. In every instance of passing, but especially on the 13th day of July A. D. 1829, the defendant was guilty of " breaking down the gate" within the meaning of the act. To this the penalty attaches without any regard to the legality of the demand for toll, and any other construction would authorize a person who had paid toll, to dig up the road, or, at least, he would be subject to no penalty for so doing ; so too of wanton and malicious damage to the same.

3. The defendant was not exempted by the act. The farm in *Ludlow* was situated in another town and county, and several miles distant from that on which he lived ; it was, therefore, not within " the ordinary domestic business of family concerns." It does not appear that he ever went there solely for the purpose of procuring articles for his family, and it does appear that when he passed the gate in July, his business was to carry materials to a tenant making repairs upon a distant house in which the tenant resided. It is enough that he carried some salt likewise, that being incidental, and not his principal purpose.—8 *Johns.* 116.—9 *Id.* 356.—15 *Id.* 510,

*Washburn, for the defendant,* contended—1. That by reason of the business in which the defendant was engaged, at the several times of passing the gate, he was exempted from the payment of toll.

2. That if he was exempted, the turnpike was to him a free road, and he had a right forcibly to pass the gate.

3. That if in passing the gate, the defendant had broken or injured the same, or if he had committed a breach of the peace, he

was amenable to the general laws, but was not liable to this action ; the passing the gate without paying toll, being the only cause of action distinctly charged in the declaration, the penalties for which cannot be applied to any person who has paid toll, or has a right to pass toll free.—1 *Aik.* 269.—2 *Johns.* 410.

WINDHAM,
*February,*
1830.
———
G. M. T. Co.
*vs.*
Hemmingway.

ROYCE, J. delivered the opinion of the court.—Two questions arise in this case for the court to determine. 1. If the defendant was entitled to an exemption from the payment of toll, whether he forfeited the penalty by forcibly passing the gate, without giving notice of his business and claiming his exemption. 2. Whether from the facts in evidence he really had such exemption.

The first question has been decided by this court in the case cited from 1 *Aik.* 269, and upon reasons which a majority of us think satisfactory. The penalty in question may be incurred in several different ways, as by demolishing a turnpike gate, digging up the road, or doing any wanton and malicious damage to the same, or by attempting forcibly to pass any gate without having paid the legal toll at said gate. This last is the substantive ground on which the penalty is now claimed. With reference to this ground of forfeiture, the penalty is given to ensure the payment of toll, and not for the preservation of the corporate property which is otherwise protected, inasmuch as an injury to the property is made a distinct cause of forfeiture. A person who has paid his toll, or who is exempt from the payment, is, of course, entitled to pass the gate, and the manner of his passing can have no effect to create that particular forfeiture which arises from the non payment of toll as one of its essential causes. The expressions, " without having paid the legal toll at said gate," evidently imply an obligation to pay toll, and, therefore, the penalty can only attach to those persons who are subject to that obligation.—2 *Johns.* 410. And we do not think this result is varied by the neglect or refusal of the party to make known his exemption.— This can hardly be deemed a waiver, so long as he does not submit to the demand of toll, but persists in the exercise of his right.

2. It remains to be determined whether in this case the defendant really had the exemption for which he contends. Such a construction should be put upon the act as, if possible, to secure to the corporation all their just rights, and to individuals every specified exemption, keeping in view the temptations to extortion on the one side, and to evasion and fraud on the other. The most common signification of those words in the proviso upon which the defendant relies is doubtless the best. Every person is exempted from toll when going on " the ordinary domestic

business of family concerns." Here are several terms of quali-fication, each of which must have its due influence in fixing the construction. 1. The business must be ordinary or common business ; such as does usually require attention, either at fre-quent intervals, at the return of the different seasons, or upon such occasions of necessity as do commonly, though perhaps un-frequently, occur. In 17 *Johns.* 33, the defendant owned and carried on two farms near a turnpike gate which was situated between them. He passed the gate with timber and other materials from one farm, to be used in erecting buildings on the other. It was held that he came within the proviso which exempted a person from the payment of toll, when " passing to or from his common business on his farm." That case, though very strong, is probably sustainable upon the last distinction above taken. In 2 *Pick.* 538, the defendant, a farmer, had erected a brick kiln on a part of his farm, where he manufactured bricks for sale. He passed a turn-pike gate with wood for the use of his kiln, claiming the benefit of a certain proviso, which exempted from toll a person " passing with his horse, team or cattle to or from the common labours of his farm." It was held clearly that he was not exempted. 2. It must be domestic business ; and 3, It must relate to family con-cerns. The necessity in these cases of limiting the party, with reasonable strictness, to the kind of business exempted by the act, is very manifest, as the only way to prevent indefinite frauds up-on the corporation. And a distinction between the principal busi-ness at the time, and that which is secondary or incidental, has been often recognized.—8 *Johns.* 116.—9 *Id.* 356.—15 *Id.* 510. Accordingly we must regard the transportation of materi-als to repair buildings on the farm in *Ludlow*, as the business of the defendant when he passed the gate in July. And we are clear that this cannot, with any propriety, be considered his *do-mestic family business*, which must of necessity centre in his home and family at *Mount Holly*. The result is, that in our opinion the defendant did, in this instance at least, incur the penalty of the act, and that the jury were therefore misdirected.

Judgement of county court reversed, and the cause remanded to that court for another trial.